UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| HORACE HATCHER, TDOC # 323358 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:07-CV-213 |
| | ) | |
| DET. JERRY SHELTON; JAMES (JIM) | ) | |
| NICHOLSON, Secretary of Dep't of Veterans | ) | |
| Affairs, WASHINGTON COUNTY COMM'RS | ) | |
| (# 1-X); WASHINGTON COUNTY DET. CTR.; | ) | |
| WASHINGTON COUNTY SHERIFF ED | ) | |
| GRAYBEAL, JR.; WASHINGTON COUNTY | ) | |
| SHERIFF'S DEP'T; DEPUTY RUFFO (FNU); | ) | |
| DEPUTY TERRY PHILLIPS; MR. GLEN | ) | |
| (FNU); and MRS. CRITE (FNU) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| all in their individual and official | ) | |
| capacities. | ) | |

## **MEMORANDUM OPINION**

Seeking only monetary relief, Horace Hatcher, a state inmate confined in a West Tennessee prison, brings this *pro se* civil action. According to the complaint, this case is being filed under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 691 (1971), and pursuant to various federal statutes, including 42 U.S.C. §§ 1981, 1983, 1985, 1986; and the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 2671, *et seq*. Plaintiff has also asserted multiple

claims based upon state law as well.

In the typical prisoner civil case, the Court would screen the complaint under 28 U.S.C. § 1915(e)(2), but since plaintiff has paid the filing fee, those screening procedures, which apply to prisoners who are proceeding *in forma pauperis*, do not apply to him. *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). However, the screening provisions in § 1915A which authorize the dismissal of fee-paid prisoner complaints seeking relief from a governmental entity, officer, or employee do apply in this case. *See Hyland v. Clinton*, 3 Fed. Appx. 478, 479 (6th Cir. Feb. 7, 2001) (distinguishing *Benson*). Dismissal under these provisions is appropriate where the allegations in the complaint are frivolous, malicious, or fail to state a claim upon which relief may be granted, or if a plaintiff seeks monetary relief from a defendant who is immune from such relief. *Id.* The complaint has been divided into three main categories for purposes of organization.

I. **Background**

These allegations are more easily understood against the backdrop of plaintiff's criminal case. To this end, the Court takes judicial notice of the filings in *United States v. Hatcher*, Criminal Case No. 2:06-MJ-84 (E.D.Tenn. Aug. 28, 2006). In the criminal complaint filed in that case on May 1, 2006, plaintiff was charged with attempted theft of property, not exceeding $1,000.00, belonging to the VA Retail Store, in violation of 18 U.S.C. § 661. This complaint arose out of an incident which occurred on April 19, 2000, at the store in the VA hospital. The charging instrument alleged that, on that day, plaintiff surreptitiously removed from the display shelf a Polaroid DVD player with LCD display,

2

that he took it to a cashier to return it, that he represented to the cashier that he had no receipt because it was a gift, and that, when he was advised that he could exchange it but could not get money for it, he began bringing items to the counter to exchange for the DVD. Someone then reported seeing plaintiff remove the DVD from the shelf before bringing it to the cashier and, when the report was looked into, it was discovered that one of the DVD players was missing from the display shelf. The VA police were notified, and plaintiff left the store and tried to leave the building. The complaint was signed by Detective Jerry Shelton of the Department of Veterans' Affairs Police.

On May 5, 2006, plaintiff was arrested on the charge, remanded to the custody of the United States Marshals Service, and taken to the WCDC, until such time as the charges were disposed of. On August 17, 2006, plaintiff pled guilty and received a sentence of "time served."

## II. **The Defendants**

### A. **Non-Suable Defendants**

First of all, plaintiff has named the Washington County Detention Center ["WCDC"] and the Washington County Sheriff's Department as defendants. However, the CDC is a building and neither it nor the Sheriff's Department are suable entities under § 1983. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 & n. 55 (1978) (for purposes of a § 1983 action, a "person" includes individuals and "bodies politic and corporate"); *Brock v. Warren County, Tenn.*, 713 F.Supp 238 (E.D. Tenn. 1989) (ruling that a sheriff's department is not a "person" subject to suit); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.

3

1994) (finding that a police department is not a suable entity). Plaintiff has failed to state a claim against these defendants and they and all claims against them are **DISMISSED** as frivolous and for failure to state a claim.

B. **Federal Defendants**

There is also a problem with the federal defendants, Jerry Shelton and James Nicholson, sued in their official capacities. A suit against a governmental official is the same as a suit against the entity itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, a suit against these defendant officials is like a suit against the Department of Veteran's Affairs itself. The Supreme Court has found that, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature." *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 475 (1994) (internal citations omitted). The United States grants a limited waiver of this immunity through the FTCA, for suits alleging tortious conduct of federal employees, acting within the scope of their employment, but has limited its consent to cases in which a private individual would be liable under like circumstances and excepts from liability claims stemming from discretionary acts. Plaintiff has not provided any proof that this federal agency has given its consent to this lawsuit. Accordingly, his claims for damages against these defendants, in their official capacities, are also frivolous and fail to state a claim. Those claims are also **DISMISSED**.

C. **County Defendants**

Likewise, a suit against county employees or authorities in their official

4

capacities is the equivalent of a suit against the county itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The liability of a municipality, such as a county, hinges on a showing by a plaintiff that a constitutional violation was caused by a municipal policy, practice or custom. *Monell*, 436 U.S. 694. Here, plaintiff claims that the WCDC and the VA have been sued countless times for their "endorsement of overtly and flagrantly racially discriminatory practices and procedures." However, to point out the obvious, plaintiff's contentions were made against a *building* and a *federal* agency and they are wholly insufficient to show a *municipal* policy.[1]

Moreover, the mere fact that prior lawsuits have been filed against a municipality, if any have been, without anything more, provides no basis for municipal liability. *See Peters v. City of Biloxi, Miss*, 57 F. Supp.2d 366, 378 (S.D.Miss. 1999). Having failed to show a policy, practice, or custom of Washington County or connect it to any constitutional infringement, plaintiff cannot press his claims for damages, including punitive damages, against the defendants, in their official capacities. *See, e.g., Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983 "); *Kentucky v. Graham*, 473 U.S. at 166. These claims too are **DISMISSED** as frivolous and for failure to state a claim.

---

[1] The only allegations that remotely could be construed as an allegation of practice as to a *remaining* defendant are leveled against a *federal* defendant: "Det. Jerry [Shelton], who has a history of discrimination and animus toward (sic) blacks, took it upon himself [to] investigate a 'non-crime' and maliciously prosecute the [plaintiff]" and that, while questioning plaintiff, this defendant described plaintiff as "[a] retarded n_ _ _ _ _ _ ", and told him that he was "caught up in the web of things with the mark of the beast." Compl. at 11, ¶¶ 20 and 39.

III. **The Claims**

A. **Plaintiff's Contentions**

According to the contentions in the civil complaint, plaintiff was falsely detained and "basically torture[d]" at the WCDC from May 12th to August 20th of 2006. These things happened as a direct result of a conspiracy between various Washington County Sheriff's Department personnel, the Sheriff himself, and VA Police Defendant Jerry Shelton, who conducted an investigation of plaintiff. The object of the conspiracy was to purposefully and intentionally deprive plaintiff of his rights to due process and to be free from cruel and unusual punishment and to subject him to inhumane and exceptionally dangerous living conditions in an effort to cause him to confess.

The basis of the conspiracy was racial animus toward, and personal dislike of, plaintiff. The plan entailed, *inter alia*, defendants charging plaintiff with attempting to defraud the United States government. And, over several months, the conspiracy was accomplished by subjecting plaintiff to unconstitutional treatment and unconstitutional conditions of confinement designed to cause plaintiff physical and psychological deterioration. However, there are video tapes in existence which would end any possible justification for plaintiff's continued detention, if the facts of the video tape were made readily available.

Among the housing conditions which were part and parcel of the conspiracy, according to plaintiff, was his bunk assignment. He was given an upper bunk, despite knowledge of his various debilitating and crippling handicaps and disabilities, both

6

psychological and physical. At some point, plaintiff fell off the bunk, and this caused a hernia to develop on the left side—a medical problem which caused great pain and for which he received inadequate medical attention on May 5, 2006. Furthermore, plaintiff was placed in a cell with a violent inmate who made no secret of his hatred for minorities (blacks in particular) and who was a known member of the Aryan Nation, a white supremacist group. This inmate threatened to sexually assault and murder plaintiff and, in fact, the inmate mixed biologically hazardous materials with plaintiff's ear drops, and plaintiff developed terrible ear infections and inner and middle ear damage as a result.

While he was housed in that cell, plaintiff slept on the floor and was treated with exceptional cruelty. Plaintiff asked why he was placed in a cell with a known racist, but the reply by Officers Hogan and Hall—who are not specifically named as defendants—was that it was the consequence of "n_ _ _ _ _ _ stealing," that the Sheriff would have to give permission for the move, and that permission would not be granted simply because of inmates' dislike of one another. Though plaintiff's life was in danger, defendants Ed Graybeal, Jr., Terry Phillips, and Deputy Ruffo refused to move him from the cell. Other alleged deprivations encompassed in the conspiracy involve denials of access to the courts, to legal materials, to medication and, perhaps, to the tools to maintain basic hygiene.

B. **Analysis**

   1. *Statute of Limitations*

The first problem is one which plaintiff recognizes in his complaint—timeliness of the lawsuit. (Compl., p. 2 - 3, ¶¶ 4 -7). Because section 1983 does

7

not contain a statute of limitations, the Court must look to the limitations period which applies to the closest state analogue to a § 1983 action. *Wilson v. Garcia*, 471 U.S. 261, 268, 276-279 (1985), *superceded by statute on other grounds as recognized in Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 379-80 (2004).

The applicable statute of limitations, which controls a civil rights action for damages in Tennessee (the closest state analogue to a § 1983 case), is one (1) year after the claims accrue. Tenn. Code. Ann. § 28-3-104(a)(3). A *Bivens* action is also controlled by the same statute. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (citing, *inter alia*, *Garcia*). The claims accrue and the statute begins to run when the plaintiff knows or has reason to know of the injury upon which his action is based. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

According to his pleading, plaintiff's claims accrued on September 2, 2006, when defendant Shelton "knowingly conspired with other co-defendants to illegally take advantage of defendant." [The Court assumes that the last word of the preceding sentence was intended to be "plaintiff," not "defendant."] However, the first event occurred in late March of 2006, with plaintiff's unfortunate visit to the VA Retail Store and the DVD incident which occurred inside [Compl., p. 10, ¶ 11) and the last event complained of would have had to happen on or before August 17, 2006, because on that date, plaintiff was sentenced to "time served" and, thereby, completed his federal sentence in the WCDC.

Thus, a conspiracy between federal defendants and the county defendants to charge plaintiff with a federal crime in order to subject him to the conditions at the WCDC

8

necessarily would have terminated on August 17, 2006, when his federal sentence was served. Plaintiff's insistence that his claims accrued on September 2, 2006, are inconsistent with the allegations as to dates made in the complaint and the Court's own record in his criminal case.

The civil complaint was filed, under the "mailbox rule," on August 28, 2007.[2] Any alleged violations occurring more than one year prior to this date are time-barred. This means that all claims pertaining to a conspiracy which accrued from March of 2006 to August 28, 2006, are untimely and are **DISMISSED**.[3]

2. *Conclusory Contentions*

Even if some of the claims have somehow escaped the time-bar, they can advance no further. A civil conspiracy, as explained by the Sixth Circuit, "is an agreement between two or more persons to injure another by unlawful action. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). A conspiracy under 42 U.S.C. § 1985 is an agreement of two or more persons to deprive, directly or indirectly, a person of equal protection of the laws, an act in furtherance

---

[2] Under the "mailbox rule," a *pro se* prisoner's complaint is deemed filed on the date it is handed to prison officials for mailing to the court. *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)). The envelope which contained the complaint bears a stamp showing that it was received in the prison mail room at Northwest Correctional Complex on August 28, 2007.

[3] The statute of limitations for FTCA claims is two years from the accrual date of the claims. 28 U.S.C. § 2401(b). However, plaintiff's claims of false imprisonment and false arrest accrued when he was formerly charged, i.e., May 5, 2006, and those claims appear to be time-barred as well. *See Wallace v. Kato*, 127 S. Ct. 1091, 1096 (2007) ("[F]alse imprisonment ends once the [plaintiff] ... is bound over by a magistrate or arraigned on charges").

9

of the conspiracy which results in injury to the person or his property or a deprivation of a right or privilege of a citizen. *Coker v. Summit County Sheriff's Department*, 90 Fed.Appx. 782, 788-89, 2003 WL 23140066, at *6 (6th Cir. Dec. 15, 2003). It is a plaintiff's burden with respect to his § 1985 claims to show that a deprivation was caused by class-based discrimination. *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir. 1992)).

Circumstantial evidence may prove a conspiracy, *ibid.* (citation omitted), but this evidence cannot be speculative. *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Finally, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. *Spadafore*, 330 F.3d at 854(citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). *See generally Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971) (conspiracy claims require some factual specificity, conclusory allegations are insufficient).

Here, plaintiff claims that a conspiracy to violate his rights existed, but he has not identified the specific Sheriff's Department defendants who were the conspirators. Nor has he provided any facts to show that there was "a meeting of the minds" between two or more defendants as to *one* plan, *see Spadafore*, 330 F.3d 854, to falsely arrest, convict and ultimately imprison plaintiff in the WCDC and house him under unconstitutional conditions. Quite simply, there is no allegation of fact linking any of the defendants to a conspiracy to violate plaintiff's constitutional rights or to deny him a right or privilege. *See Coker v. Summit County Sheriff's Dep't*, 90 Fed. Appx. 782 (6th Cir. Dec. 15, 2003). And, needless

10

Case 2:07-cv-00213   Document 10   Filed 08/29/08   Page 10 of 13   PageID #: 24

to say, with respect to the § 1985 claim, plaintiff's burden of showing that a deprivation was caused by class-based discrimination, *see id.*, cannot be borne by conclusory allegations like those offered here.

A court is not required to conjure up facts not pled to support conclusory allegations, *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 437 (6th Cir. 1988), and that will not be done in this case. Plaintiff's conspiracy contentions fail to state a claim for relief. In the absence of a viable claim under § 1985, plaintiff does not state an actionable claim under 42 U.S.C. § 1986 either.

### 3. *The Heck Rule*

The Supreme Court has held that, where a judgment in plaintiff's favor would necessarily imply that his state court conviction is invalid, his § 1983 action for damages must be dismissed, unless he can demonstrate that his conviction has been reversed on direct appeal, declared invalid by a state tribunal, or otherwise called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). This ruling applies to an action brought under *Bivens*, *see Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998), or the FTCA. *Parris v. United States*, 45 F.3d 383, 384-85 (10th Cir. 1995).

Here, plaintiff's position is that he was falsely arrested, detained, and convicted—all of which were actions taken within the context of a conspiracy to subject him to unconstitutional conditions of confinement. Undoubtedly, if plaintiff were to prevail on his conspiracy claim, this necessarily would imply that his conviction is invalid. Plaintiff has

11

not shown that his conviction has been vacated or invalidated and, at this time, his claims are *Heck*-barred.

### 4. *The FTCA Claims*

Before filing a claim for damages under the FTCA in federal court, a litigant must exhaust his administrative remedies, by presenting the claim to the appropriate federal agency and by being issued, thereafter, a written denial. 28 U.S.C. § 2675(a). The exhaustion requirement is jurisdictional and cannot be waived. *Barnett v. Okeechobee Hosp*., 283 F.3d 1232 (11th Cir. 2002). Because plaintiff has not demonstrated administrative exhaustion of any claims under the FTCA, the Court lacks jurisdiction over them and, hereby, **DISMISSES** those particular claims.

### 5) Claims under § 1981

Tennessee's one-year limitations statute also applies to § 1981 claims. But, more important than a time-bar is the fact that section 1981 governs the right to equal protection to make and enforce contracts. Since the complaint contains no allegations that plaintiff was denied equal protection in making or enforcing a contract, he has failed to state a claim under § 1981 in the first place. These claims are **DISMISSE**D.

## III. **Conclusion**

Because the claims in this complaint are frivolous and fail to state a claim or have been pled against a defendant who enjoys immunity, this suit will be **DISMISSED** by separate order.

12

**ENTER**:

                                                                    <u>s/J. RONNIE GREER</u>
                                                  UNITED STATES DISTRICT JUDGE